Ryan KRESS, et al.,
Plaintiffs/Respondents,

v.

LEDERLE LABORATORIES, A DIV. OF AMERICAN CYANAMID COMPANY,
Defendant/Appellant.

No. 65676.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 25, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 12, 1995.

Application to Transfer Denied
July 25, 1995.

Max O. Truitt, James Robertson, Roger W. Yoerges, Margaret M. Dotzel, Wilmer, Cutler & Pickering, Washington, DC, for defendant/appellant Lederle Laboratories.

Mark I. Bronson, Newman & Bronson, St. Louis, Marc S. Moller, Kreindler & Kreindler, New York City, Stanley P. Kops, Kops & Fenner, P.C., Philadelphia, PA, for plaintiffs/respondents Ryan Kress and Carolyn Kress.

SMITH, Presiding Judge.

Lederle Laboratories, a division of American Cyanamid Company, appeals from the order of the trial court setting aside its previously issued order approving a settlement between plaintiff, acting through his next friend, and defendant Lederle. We reverse.

Plaintiff Ryan Kress was born healthy. Shortly after his birth he took an oral polio

vaccination called Orimune manufactured by Lederle Laboratories. Within two weeks his legs went limp and he is permanently paralyzed from the waist down. His mother individually and as next friend, filed suit against Lederle, Group Health Plan of Greater St. Louis, Group Health Plan Foundation, Dr. Linda Clark, and DePaul Health Center. Between the time of the ingestion of Orimune and the onset of symptoms of polio, Ryan was treated at DePaul Health Center for an unrelated infection and received amoxicillin, an antibiotic that allegedly made him susceptible to contracting polio from the live polio vaccine. Plaintiffs alleged that the Lederle vaccine was defective causing the polio and that Ryan's health care providers were guilty of malpractice in treating him with the amoxicillin causing the polio.

At the time plaintiffs' suit was filed a suit entitled *Callahan v. Cardinal Glennon Hospital* was pending in the same court. The circumstances of the two cases were remarkably similar. In that case the plaintiffs dismissed Lederle prior to trial and proceeded against the health care providers. Eventually, a jury verdict of $16 million was returned against the health care providers and that judgment was affirmed. *Callahan v. Cardinal Glennon Hospital*, 863 S.W.2d 852 (Mo. banc 1993). Plaintiffs' attorneys followed closely the *Callahan* litigation, discussed the cases extensively with the *Callahan* attorneys, and "basically followed the model of the plaintiffs' case in the *Callahan* case to try the *Kress* case to the jury".

After the successful *Callahan* trial, plaintiffs and Lederle agreed to settle the *Kress* litigation for $50,000. That settlement was presented to the trial court and approved after a hearing. Plaintiffs then proceeded to trial against the remaining defendants. During the trial plaintiffs settled with DePaul for $75,000. While the jury was deliberating the plaintiffs and remaining defendants made a "high/low" agreement which guaranteed plaintiffs a recovery of $250,000 in the event of a defendant's verdict and capped plaintiffs' recovery at $2 million in the event of a plaintiffs' verdict in a higher amount. The jury returned a defendants' verdict.

With new counsel, plaintiffs filed a motion before the judge who approved the settlement with Lederle to set aside the approval of that settlement. The motion was based on two grounds. First, the settlement was void under § 507.150.2 RSMo 1994, because the next friend had failed to obtain a bond required by § 507.150.1 prior to receipt of the settlement proceeds. Second, that Lederle had failed voluntarily to advise plaintiffs of information which would indicate that the case had a higher settlement value than plaintiffs believed it did and the settlement was therefore inequitable. Pursuant to the settlement, $20,000 was disbursed by Lederle to plaintiffs' attorneys and a $30,000 check was issued to the next friend which is still being held uncashed. The trial court granted plaintiffs' motion without explanation.

Both Ryan Kress and his mother are now, and were before the settlement, residents of Florida. The order approving the settlement did not mandate a bond but required the next friend to open a conservator's estate in the Florida county of plaintiffs' residence. That has been done but the Lederle settlement proceeds have not been deposited into that account. Lederle contends that under a choice of laws approach the state of plaintiffs' residence is the state with the most significant contacts and the procedures for the handling of settlements of minor's claims in that state should apply. Under Florida law the method directed by the trial court in its order approving the settlement is appropriate.

In *Kennedy v. Dixon*, 439 S.W.2d 173 (Mo. banc 1969) [6–8] the court adopted the most significant relationship test articulated in Restatement (Second) of Conflict of Laws. Under that test Florida has the most significant contacts as regards protecting the assets of the minor which is the purpose of the bond requirement of the Missouri statute. But the Restatement also provides that a court usually applies its own local law rules prescribing how litigation shall be conducted. § 122 Restatement (Second) of Conflict of Laws (1971). The local law of the forum also determines the methods of securing obedi-

ence to orders of the court, including the determination of whether a bond is required. § 130 Restatement (Second) of Conflict of Laws (1971) Comment a. The Missouri law controls the requirements for a bond and the consequences of failing to procure one.

Sec. 507.150 RSMo 1994 provides in pertinent part:

1. Before a next friend or guardian ad litem can receive or receipt for any money or property, personal or real, and before he can acknowledge satisfaction or discharge of any judgment, he must execute a bond to such infant; ...

2. Failure to execute such approved bond with approved surety or sureties when required under the provisions of subsection 1 of this section shall, upon receipt by a next friend or guardian ad litem of any money or property for or on behalf of such minor, immediately render such next friend or guardian ad litem personally liable to the minor for a penal sum in an amount double the value of the money or property and also *shall render absolutely void and of no effect any release, receipt or acknowledgment of satisfaction or discharge of any judgment which has or is in the future made or executed by the next friend or guardian ad litem.* (Emphasis supplied).

■ Plaintiff's next friend did not post the required bond before she received the $30,000 check provided for in the settlement. The additional $20,000 was distributed to the original attorneys for their fees and expenses. Plaintiffs contend that the emphasized language voids the settlement and supports the trial court's action in withdrawing its approval of the settlement. It does not. The language voids a release, receipt or acknowledgement of satisfaction or discharge of any judgment. It does not by its express language have any effect on the settlement or judgment. The statute is designed to protect the minor from the misapplication or misuse of the minor's property by the guardian ad litem or next friend. It does not, and is not intended to, provide any protection to the minor as concerns the sufficiency or wisdom of a settlement or judgment. That protection is provided by the requirement of judicial approval of the settlement or judgment. Sec. 507.184 RSMo 1994.

■ Section 507.184 makes clear that "release" is not the same as "settlement" and "satisfaction and discharge" are not the same as "judgment". Sec. 507.184.2 authorizes the next friend to contract for a settlement of the minor's claim with approval of the court and then provides authority for the next friend, without further court approval, to execute and sign a release or satisfaction and discharge of a judgment. The statute provides a two step procedure for disposing of a minor's claim. It requires a settlement or a judgment which has court approval. It then provides for a release to accomplish the settlement or a satisfaction or discharge of the judgment. The requirement for a bond does not arise until the next friend is to receive money for the minor and the failure to have a bond at that time results in any release or satisfaction or discharge being void. The failure to have a bond upon receipt of the money by the next friend does not, under the statute, affect in any way the validity of the settlement or the judgment. Settlement and judgment are treated as comparable means of disposing of the minor's claim. Release, discharge and satisfaction are treated as comparable methods of effectuating the settlement or judgment. It would be absurd to contend that after rendition of a judgment in favor of the minor the failure of the next friend to obtain a bond before receipt of the judgment award would render the judgment void. The same is true of a settlement. A defendant's failure to insure that the next friend is properly bonded could result in double payment of a judgment or a settlement, but it does not render void either the settlement or the judgment.

■ Plaintiffs next contend that the settlement is inequitable because Lederle failed to volunteer information that would have indicated it had greater potential liability than plaintiffs and their attorneys believed. Plaintiffs sought relief under Rule 74.06. To justify the relief accorded by the trial court the alleged non-disclosures would have to amount to "fraud, misrepresentation, or other misconduct of an adverse party" or "it is no longer equitable that the judgment remain in force." Silence may amount to a

representation upon which the other party may rely only if the party remaining silent has a duty to speak. Such a duty may arise through a fiduciary or confidential relationship. *Taylor v. Western Casualty & Surety Company*, 523 S.W.2d 582 (Mo.App.1975) [2, 3]. In the situation where there are adverse parties trying to negotiate a settlement at arm's length, there is no fiduciary or confidential relationship. *Sanger v. Yellow Cab Company, Inc.*, 486 S.W.2d 477 (Mo. banc 1972) [5–7]. Lederle was under no duty to advise plaintiffs of materials or cases which would make plaintiffs' case appear stronger. The American system of justice is built upon the premise that truth is likeliest to emerge from a vigorously competitive contest between opposing counsel. *USM Corporation v. SPS Technologies, Inc.*, 694 F.2d 505 (7 Cir.1982) [6]. Given the adversarial setting it is unrealistic to call a failure to go out of one's way to produce damaging material a "fraud" on opposing parties or their attorneys. *Id.* Plaintiffs have not established that Lederle's non-disclosures were fraud, misrepresentations, or misconduct.

The provision of the rule that allows a judgment to be set aside if it is no longer equitable that the judgment remain in effect applies to judgments that have prospective effect as contrasted with those that offer a present remedy for a past wrong. *Anderson v. Central Missouri State University*, 789 S.W.2d 41 (Mo.App.1990) [5]. It addresses a subsequent circumstance which makes enforcement of the judgment inequitable. *Juenger v. Brookdale Farms*, 871 S.W.2d 629 (Mo.App.1994) [2]; *Everhart v. Crabb*, 775 S.W.2d 335 (Mo.App.1989) [3]. The settlement approved by the court is for a present remedy to a past wrong. There is no need for future court supervision over the parties and there was no subsequent development that rendered the settlement inequitable. All of the information that plaintiffs claim should have been disclosed was available before the settlement. Rule 74.06(b)(5) does not provide relief from the settlement.

Plaintiffs were faced with a tactical decision between proceeding against Lederle on the theory of a defective or dangerous vaccine or against the medical providers for negligence in prescribing medicine which allowed the polio vaccine to cause polio. They chose the latter course which had been extremely successful in the *Callahan* litigation, and settled with Lederle in order to pursue that course. There is nothing inequitable in holding plaintiffs to the decision they voluntarily made simply because the result was not what they hoped for and anticipated.

The settlement approved by the court is valid and subsisting. There are procedures for effectuating it and, if necessary, to appoint a different guardian to complete the settlement. We need not address those matters.

Order of the trial court setting aside its previous approval of the settlement is reversed and the cause remanded for further proceedings consistent with this opinion.

PUDLOWSKI and WHITE, JJ., concur.