FARMERS EXCHANGE BANK, a
Missouri Banking Corporation,
Respondent,

v.

METRO CONTRACTING SERVICES,
INC., a Missouri Corporation,
Defendant,

Harlan R. Russell, Appellant,

and

Rose Mary Russell, Defendant.

No. WD 60759.

Missouri Court of Appeals,
Western District.

March 28, 2003.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 27, 2003.

Application for Transfer Denied
July 1, 2003.

384

Jeffrey A. Befort and Greta A. McMorris, Kansas City, MO, for respondent.

Lyle L. Odo, Platte City, MO, for appellant.

Before SMITH, P.J., and LOWENSTEIN and HARDWICK, JJ.

EDWIN H. SMITH, Presiding Judge.

Harlan R. Russell, the appellant, in his capacity as the president of Metro Contracting Services, Inc. (Metro), a Missouri corporation, whose sole shareholders were the appellant and his then and now former wife, Rose Mary Russell (Ms. Russell),[1] executed two promissory notes in favor of Farmers Exchange Bank (Farmers notes), the respondent. As security for the notes, the appellant executed a personal guaranty in not only his name, but in the name of Ms. Russell, by forging her signature. Metro subsequently defaulted on the notes, prompting suit by the respondent against not only Metro, but against the Russells, under the personal guaranties, to collect the total balances then due on the notes. The suit against Ms. Russell was later dismissed due to her signature being forged. The case against the appellant proceeded to a summary judgment for the respondent in the amount of $372,791.47, plus interest and attorney's fees. The instant case arises out of the appellant's attempts to prevent the respondent from partially satisfying that judgment by attaching and executing upon the note proceeds owed to the Russells as payees of a promissory note executed by Eaton Investments, L.L.C. (Eaton note), in the principal amount of $293,000.[2]

The appellant raises seven points on appeal, raising the question of whether the trial court erred in failing to quash the prejudgment attachment of the appellant's interest in the Eaton note[3] and the subsequent execution thereon in satisfaction of the respondent's judgment against the appellant. The implicated and overarching issue raised with respect to these claims is whether, under the applicable and controlling law, the appellant's interest in the Eaton note was subject to attachment and execution to satisfy the judgment against him. The resolution of that issue depends on whether the Russells held the note as tenants by the entirety or as tenants in common. The parties agree that if we determine that the trial court correctly found that they held the Eaton note as tenants in common, then the court did not err in finding that the Eaton note proceeds were subject to attachment and execution and in not quashing the prejudgment attachment. The parties, however, not only disagree on the proper classification of the appellant's interest in the Eaton note, but whether Missouri or Kansas law applies in deciding that issue. The appellant also

---

1. The supplemented record indicates that while this case was pending, the Russells were divorced by the District Court of Johnson County, Kansas, on October 23, 2002.

2. The record does not indicate the circumstances for the execution of the Eaton note.

3. The supplemented record indicates that pursuant to the Russells' "Marital Separation and Settlement Agreement," the appellant's interest, if any, in the Eaton note proceeds was awarded to Ms. Russell.

claims that even if the appellant's interest in the Eaton note was subject to attachment and execution, the trial court still erred in failing to quash the prejudgment attachment and allowing execution pursuant thereto in that the prejudgment attachment was deficient on its face such that it was null and void, *ab initio*, rendering void the subsequent execution predicated thereon.

Because we find that the issue of the proper classification of the appellant's interest in the Eaton note is governed by Kansas law; that pursuant thereto his interest was as a tenant in common and, therefore, was subject, under Missouri law, to attachment and execution to satisfy the respondent's judgment against the appellant; and that the prejudgment attachment was not facially deficient, we affirm.

### Facts

On April 14, 2000, the appellant, as the president of Metro, a Missouri corporation, with its principal place of business in Riverside, Missouri, in consideration of two loans from the respondent to Metro, executed two promissory notes in the principal amounts of $250,000 and $200,000. As further consideration for the loans to Metro, a personal guaranty was executed in the name of the appellant and Ms. Russell, guaranteeing full payment of all debts, liabilities and obligations of Metro to the respondent under the notes. However, the guaranty in Ms. Russell's name was forged by the appellant.

Sometime prior to August 9, 2000, the appellant sold the stock of Metro to Albert G. Rampone II without the written consent of the respondent, as required by the terms of the notes. Metro failed to make the required principal and interest payments of September 14, 2000. Consequently, on September 21, 2000, the respondent made written demand on Metro,

the Russells and Rampone for the September note payments, but no payments were forthcoming. On October 4, 2000, Eaton Investments, L.L.C., executed a promissory note in favor of the Russells in the principal amount of $293,000. The note reflected that payments to be made thereunder were to be made to the Russells at 8909 Mohawk Road, Leawood, Kansas. According to the records of the Recorder of Deeds of Johnson County, Kansas, the Russells were the owners of record of the residential property located at that address. Metro also failed to make the required October 14, 2000, payments. Thereafter, by letter dated October 27, 2000, the Russells, as guarantors, were notified by the respondent that the notes were in default and that, pursuant to the terms of the notes, it was accelerating the payment of the notes.

On November 7, 2000, the respondent filed a two-count petition in the Circuit Court of Platte County against Metro and the Russells for "breach of promissory notes" as to Metro under Count I and "breach of guaranty" as to the Russells under Count II, seeking judgment for the amount of the balances then due under the notes as accelerated, plus costs and expenses of the action, including reasonable attorney's fees, and prejudgment and post-judgment interest. On December 15, 2000, all three defendants filed their answers to the respondent's petition. On January 2, 2001, Ms. Russell filed an amended answer. In their answers, the Russells admitted that they resided at 8909 Mohawk Road, Leawood, Kansas.

On February 23, 2001, the respondent filed a motion for leave of court to file its "Verified First Amended Petition and Application for Writ of Attachment." In its proposed first amended petition, the respondent added Counts III, IV and V: (1) Count III, against Metro and the appellant

seeking actual damages "in excess of $25,000" and an award of punitive damages for "fraud on the note," alleging the falsification of financial statements submitted by Metro to the respondent to obtain the loans; (2) Count IV, against the appellant seeking the amounts due under the notes and an award of punitive damages for "fraud on the guaranty," alleging that the appellant forged the personal guaranty of Ms. Russell; and (3) Count V, an "application for writ of attachment," seeking prejudgment attachment, pursuant to "Rule 85.22 and Mo.Rev.Stat. § 521 et seq.," of the appellant's interest in the Eaton note, alleging that the appellant owned "at least a one-half interest in the Eaton note" as a tenant in common. In support of its application for the writ, the respondent attached the affidavit of Bradley D. Richerson, the executive vice president of the respondent.

On March 1, 2002, the trial court took up and sustained the respondent's motion for leave to file its amended petition. The court then proceeded to hear the respondent's application for a prejudgment writ of attachment of the appellant's interest in the Eaton note. At the hearing, the respondent argued that the appellant was a Kansas resident such that Kansas law applied in determining his interest in the Eaton note and that under Kansas law his interest in the Eaton note was as a tenant in common with Ms. Russell and, therefore, under Missouri law, it was subject to attachment to satisfy any judgment it might obtain against him in the underlying suit. In opposition to the issuance of the writ, the appellant argued that the appellant was a Missouri resident such that Missouri law applied, under which his interest in the Eaton note was held with Ms. Russell as tenants by the entirety and was therefore not subject to attachment. After hearing the evidence, the trial court, finding that the appellant, as a tenant in common, "own[ed] at least one-half interest in the Eaton Note, his interest being valued at $146,500," ordered the issuance of the prejudgment writ of attachment requested by the respondent, attaching the appellant's interest in the Eaton note. The writ issued the same day, attaching one-half of the $3,632.78 ($1,816.39) monthly payments on the Eaton note. At the same time of the issuance of the writ, the respondent dismissed, without prejudice, all the claims it had filed against Ms. Russell. On April 2, 2001, the appellant filed his notice of appeal with this court, appealing the issuance of the prejudgment attachment. On the motion of the respondent, that appeal was dismissed by this court on April 27, 2001.

On March 14, 2001, the appellant filed a third-party petition against Albert G. Rampone, Barbara Rampone, Aero Star Concrete, Inc., and Metro, alleging six counts: in Count I, seeking a judgment declaring the rights and obligations of the parties to the agreement selling the Metro stock to the third-party defendants, in Counts II, III, and IV, seeking damages for fraud, breach of contract, and negligence with respect to the sale of the Metro stock to the Rampones, and in Count V, seeking an accounting and the appointment of a receiver to manage and protect the assets of Metro and Aero Star.

■ On May 25, 2001, the respondent filed a motion for summary judgment on its amended petition. On June 12, 2001, the appellant filed a motion to "dissolve or quash prejudgment writ of attachment." As to such motion, Rule 85.13 provides for a hearing upon request, to be conducted within ten days after the filing of the request. No request for hearing was ever made by the appellant. The respondent's motion for summary judgment was taken up and heard on July 26, 2001, and taken

under advisement by the trial court. On August 10, 2001, "partial summary judgment" was granted to the respondent against Metro and the appellant on Counts I and II of the respondent's amended petition. On Count I, judgment was entered against Metro "in the principal amount of $372,791.47, plus interest in the sum of $31,974.01 as of the 25th day of May, 2001, plus continuing interest … plus reasonable attorney fees in an amount to be determined by the Court." The identical judgment was entered against the appellant on Count II. On October 18, 2001, the respondent dismissed without prejudice Counts III and IV of its amended petition. Thereafter, on October 24, 2001, "judgment" was entered against the appellant and Metro as set forth in the trial court's partial summary judgment of August 10, 2001. And, in addition, the judgment awarded the respondent $47,500.19 in attorney's fees. The court also ordered Counts III and IV of the appellant's amended petition and the appellant's third-party petition dismissed without prejudice.[4]

On October 31, 2001, the appellant filed a motion to "Set Aside October 18, 2001 Judgment Pursuant to Rule 74.06." Of course, there was no October 18, 2001 judgment. We assume the appellant was referring to the trial court's October 24 judgment. In the appellant's motion, counsel claimed that he was not aware of the "October 18" judgment and only learned about it on October 30, 2001, from his client. Counsel alleged that the "information came as a complete shock and surprise" to him. Also on October 31, 2001, the respondent filed a motion for an order disbursing the Eaton note proceeds that had been attached pursuant to the prejudgment attachment of March 1, 2001.

The respondent's motion for disbursement of the attached funds and the issue of the amount of attorney's fees to be awarded to the respondent were noticed up by the respondent for hearing on November 26, 2001. The portion of the notice referencing a determination of attorney's fees is curious in that attorney's fees were determined and ordered in the court's October 24, 2001, "judgment." In any event, on November 26, 2001, a hearing was held by the trial court ostensibly to decide attorney's fees and whether the attached Eaton note proceeds should be disbursed in satisfaction of the judgment entered against the appellant. On that same date, the trial court re-entered what amounted to the exact same judgment it entered on October 24, 2001, *sans* the dismissal language. Also, on that same date, the court entered an order sustaining the respondent's motion to disburse the note proceeds that had been attached pursuant to the prejudgment attachment of March 1, 2001. Although not expressly disposing of the appellant's motion to dissolve the attachment, the trial court's order implicitly did so.

On December 4, 2001, the appellant filed a notice of appeal to this court. On December 21, 2001, the appellant filed his motion for a new trial. On January 10, 2002, the motion for new trial was overruled. On January 23, 2002, the appellant filed what he denominated as a motion "to Enter Immediate Judgment for Purposes of Interlocutory Appeal." On February 7, 2002, although the trial court had already entered what it denominated a final judgment, it nonetheless entered what it denominated a "judgment entry," rather than an order, sustaining the appellant's motion for early appeal pursuant to "Rule 74.01."

This appeal follows.

---

**4.** A voluntary dismissal without prejudice under Rule 67.02 does not require court action.

*Kirby v. Gaub,* 75 S.W.3d 916, 917 (Mo.App. 2002).

### Appellate Jurisdiction

As in every case, we are required to determine, *sua sponte*, our jurisdiction. *Union Hill Homes Ass'n, Inc. v. RET Dev. Corp.*, 83 S.W.3d 87, 92 (Mo.App. 2002). In that regard, the record indicates that this appeal is here pursuant to the trial court's certification for early appeal under Rule 74.01(b), which reads:

**Judgment Upon Multiple Claims or Involving Multiple Parties.** When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may enter a judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. In the absence of such determination, any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Rule 74.01(b) has no application to allow appellate review of the validity of a prejudgment attachment, the issue sought to be reviewed by the appellant here.

Rule 74.01(b) is not a magic wand which the trial court can wave to certify any issue it desires for early appeal. *Pen-Yan Inv., Inc. v. Boyd Kansas City, Inc.*, 952 S.W.2d 299, 308 (Mo.App.1997). Rather, it only applies in cases where there are multiple claims against one party or the same claim against multiple parties, and one complete claim against one party has been fully adjudicated. *Id.* The issue presented by the appellant here is not a sepa-rate claim in and of itself as a sole subject for certification for early appeal under Rule 74.01(b). Rather, it is merely ancillary to the respondent's claim against the appellant in Count II in that it involves the satisfaction of the judgment rendered on that claim.

Rule 85.16 provides: "Post-trial procedure and the procedure on appeal shall be the same in actions in which an attachment has been issued as in other civil actions." Thus, inasmuch as there was a final judgment as to all the then pending claims of the respondent against the remaining parties to the suit, the respondent having dismissed without prejudice Counts III and IV of its petition and the trial court having dismissed the appellant's third-party petition, any review of the appellant's claim in this point would have been pursuant to an appeal of that judgment. In that regard, the record indicates that the appellant had filed a notice of appeal from the final judgment and his motion for new trial had been overruled prior to the filing of his motion for certification of early appeal under Rule 74.01(b) and the trial court's granting of the same. Hence, although certified by the trial court as an early appeal under Rule 74.01(b), we will treat this appeal as an appeal from the final judgment of the trial court disposing of the respondent's claims in Counts I and II, the appellant's sole remaining claims, including the appellant's claims of error as to the validity of the prejudgment attachment of the Eaton note proceeds.

### Discussion

The appellant raises seven points on appeal. In Point I, he claims that the prejudgment attachment of the Eaton note proceeds was facially deficient such that the prejudgment attachment and the subsequent execution thereon were void. In Points II–VI, the appellant claims on vari-

ous grounds that the Eaton note proceeds were, as a matter of law, not subject to attachment and execution to satisfy the judgment against him, and that the trial court misapplied the law in finding that they were. Specifically he claims that Missouri law, not Kansas law, should have been applied by the court in determining whether the appellant's interest in the Eaton note was held as a tenant by the entirety or as a tenant in common; and if it had been applied, the court would have found that his interest was as a tenant by the entirety and, therefore, not subject to attachment and execution. Finally in Point VII, he claims that, even if the trial court did not err in applying Kansas law as to the issue of how the Eaton note was held by the appellant, the court misapplied that law, which he claims required the court to limit the attachment to the appellant's actual interest in the Eaton note rather than the fifty-percent interest found by the court. Given the nature of the appellant's points and the issues presented, it is logical that we address Points II–VI first and as a group, in that all five points involve variations on the conflict of laws issue of whether Kansas or Missouri law applies in determining whether the Eaton note was held by the appellant as a tenant by the entirety or as a tenant in common, which is the seminal issue in this case.

## I.

In Points II–VI, the appellant claims, on several grounds, that the trial court erred in finding that the Eaton note was held by the appellant as a tenant in common with Ms. Russell and, therefore, was subject to attachment and execution to satisfy the respondent's judgment against the appellant, because in doing so it improperly applied Kansas law. In that regard, there is no dispute that if the note proceeds were held by the Russells as tenants in common, they were subject to attachment and execution, under Missouri law, but if they were held as tenants by the entirety, they were not. There is also no dispute that under Missouri law the appellant's interest in the Eaton note would be properly classified as a tenancy by the entirety. Thus, in resolving the appellant's claims in Points II–VI, the issue is whether Missouri or Kansas law applies in determining whether the Eaton note was held by the Russells as tenants by the entirety or as tenants in common.

The appellant's claims in Points II–VI are founded on two basic propositions, namely that the trial court should have applied Missouri law in determining the appellant's interest in the Eaton note because: (1) the law of the forum state, Missouri, governs questions of procedure, and the issue of attachment, as a remedy in this case, is an issue of procedure; and (2) § 188 of the Restatement (Second) of Conflict of Laws (1971), which is followed by Missouri courts and governs issues concerning the validity of contracts, including promissory notes and the rights created thereby, mandates applying Missouri law. The respondent, on the other hand, contends that Kansas law should apply, relying on § 258 of the Restatement (Second) of Conflict of Laws (1971), dealing with property acquired during marriage.

■■ As in every case of a conflict of laws, a court first:

> must determine at the outset whether the problem presented to it for solution relates to torts, contracts, property, or some other field, or to a matter of substance or procedure, in order to refer to the appropriate law. In other words, the court must initially, whether consciously or not, go through the process of determining the nature of the problem; otherwise, the court will not know

which choice-of-law rule to apply to the case. This process is generally called 'characterization,' and sometimes 'classification,' 'qualification,' or 'interpretation.'

16 Am.Jur.2d *Conflict of Laws* § 3 (1998). In that vein, we initially must determine whether the issue presented in this case is one of substance or procedure in that if it is a matter of procedure, as the appellant contends, there is no dispute that the law of the forum state, Missouri, would apply. *State ex rel. McCubbin v. McMillian*, 349 S.W.2d 453, 468 (Mo.App.1961).

In answering the initial conflict of laws question of substance versus procedure, we first note that Missouri law recognizes that the local law of the forum determines the method of securing obedience to court orders, as provided in § 130 of the Restatement (Second) of Conflict of Laws (1971). *Kress v. Lederle Labs.*, 901 S.W.2d 206, 208–09 (Mo.App.1995). With respect to securing obedience to court orders, Comment a of § 130 includes the remedy of attachments. This fact then would be persuasive as to the appellant's position in this point if the question posed was what classifications of personal property are subject to attachment in this state. In that instance, it would be a question of remedies that would be controlled by the forum state, Missouri. However, the question posed here is not what classifications of property are subject to attachment, but whether the Eaton note was properly classified as being held by the Russells as tenants by the entirety or tenants in common, the former, unlike the latter, not being subject to attachment in this state. In other words, the conflict of laws question presented is not a question of what classifications of personal property are subject to attachment and execution, which would be governed by the laws of the forum state as a matter or procedure,

but a question of how the appellant's interest in the Eaton note is classified. And, thus, because issues of one's rights and duties are substantive issues, as opposed to procedural issues which relate to enforcement of those rights and duties, *Mo. Nat'l Educ. Ass'n v. Mo. State Bd. of Educ.*, 34 S.W.3d 266, 284 (Mo.App.2000), the issue in our case as to whether the Eaton note proceeds were subject to attachment and execution is not a procedural issue controlled by the laws of the forum state, as the appellant contends, but a substantive issue.

Conflict of laws questions are to be answered by applying our own state's conflict of laws doctrines. *Reis v. Peabody Coal Co.*, 997 S.W.2d 49, 58 (Mo. App.1999). In resolving a conflict of laws question as a matter of substantive law, Missouri courts have historically relied on the Restatement (Second) of Conflict of Laws. *Alfano v. AAIM Mgmt. Ass'n*, 770 S.W.2d 743, 746 (Mo.App.1989); *Nat'l Starch & Chem. Corp. v. Newman*, 577 S.W.2d 99, 102 (Mo.App.1979). In that respect, the appellant contends that the conflicts issue presented, as a matter of substantive law, is properly classified as one of contracts governed by § 188 of the Restatement (Second) of Conflict of Laws, while the respondent contends that it is one of property governed by § 258. Given the nature of the dispute, we find merit in the respondent's position.

Although the underlying lawsuit between the parties was contractual in nature in that it involved a default by the appellant on the Farmers notes, the dispute on appeal is not. Rather, it concerns what property of the appellant is subject to attachment and execution, specifically whether the Eaton note proceeds were subject to attachment and execution to satisfy the respondent's judgment against the appellant, which judgment arose out of

the underlying lawsuit. The dispute as to the appellant's interest in the Eaton note, played no part in resolving the underlying contractual dispute between the parties. Its only significance to the underlying lawsuit is postjudgment, after the rights and duties of the parties were established under the Farmers notes.

■■■■■ As noted, *supra,* in determining whether the Eaton note proceeds were subject to attachment and execution by the respondent to satisfy its judgment against the appellant, we must decide the nature of the appellant's interest in those proceeds. In that regard, it is undisputed that under Missouri law if he owned them with Ms. Russell by the entireties, they were not subject to attachment and execution. The "legal relationship between a person and a thing" is a matter of property law. *In re Marriage of Breen,* 560 S.W.2d 358, 362 (Mo.App.1977). Thus, the conflicts issue concerning the appellant's interest in the Eaton note proceeds is properly classified as one of property. The question then is which law applies in deciding that issue, the law of Missouri or Kansas. As noted, *supra,* that question is answered by applying the law as to our own state's conflict of laws doctrines. *Reis,* 997 S.W.2d at 58.

Section 258 of the Restatement (Second) of Conflict of Laws (1971), provides:

Interests In Movables Acquired During Marriage

(1) The interest of a spouse in a movable acquired by the other spouse during the marriage is determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the spouses and the

movable under the principles stated in § 6.

(2) In the absence of an effective choice of law by the spouses, greater weight will usually be given to the state [where]⁵ the spouses were domiciled at the time the movable was acquired than to any other contact in determining the state of the applicable law.

Section 6, referenced in § 258, reads:

Choice–of–Law Principles

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

As to the relationship between § 6 and § 258, Comment b to § 258 reads, in pertinent part:

Of the factors listed in Subsection (2) of § 6, that which is of particular importance in the present context is the one which calls for implementation of the relevant policies of the state with the dominant interest in the determination

---

5. Although the actual text of this subsection has the word "whether" here instead of the word "where," it is clear from Comment b to § 258 that this was a mere typographical or clerical error, and the word "where" was meant.

of the particular issue. Except in rare circumstances, this state will be the state where the spouses were domiciled at the time the movable was acquired. Failing to find any rare circumstances, the general rule of § 258 would apply here in determining whether Kansas or Missouri law applies in deciding whether the Eaton note proceeds are subject to attachment and execution. And, if there was any doubt as to whether we should apply the general rule of § 258, that doubt is quickly swept away by the Missouri Supreme Court's decision in *In re Estate of Perry*, 480 S.W.2d 893, 894–95 (Mo.1972). There the Court, without specific attribution to § 258, essentially adopted the general rule of § 258 as the sole basis for determining such questions, citing *Snyder v. Stringer*, 116 Wash. 131, 198 P. 733 (1921) and 41 C.J.S. *Husband and Wife.*[6] *Perry*, 480 S.W.2d at 894–95.

In addition to contending that § 258 would not apply here because the conflict of laws issue presented is properly classified as one of contract, the appellant also contends that § 258 would not apply because it only "applies to the interest of one spouse when the other spouse acquires an interest in a movable during the marriage ... [and] ... [i]n the case at bar, we are dealing with an interest (payments under the Eaton Note) acquired by both spouses during the marriage and payable to them jointly." We do not read § 258 in the same manner as the appellant. Giving the language used its plain and ordinary meaning, *see City of Jefferson v. Mo. Dep't of Natural Res.*, 863 S.W.2d 844, 850 (Mo. banc 1993), we read § 258 as providing a means to determine *each* spouse's interest in a movable when acquired during the marriage by one spouse or both spouses. Logically, the language relied on by the appellant was not meant to limit the section's application to acquisitions by one spouse only, but simply reflects a means of determining each spouse's interest in property acquired during the marriage. In addition, there is nothing in *Perry* to suggest the limitation urged by the appellant to the general rule we attribute to § 258.

▮ The appellant also contends that § 258 does not apply because it only applies "in the absence of an effective choice of laws," and here the "parties expressly chose to apply Missouri law to their agreement." In support of that contention, the appellant points to the choice of law provision in the notes executed by Metro in favor of the respondent, which reads: "The law of the state of Missouri will govern this agreement." While that provision would govern in the underlying contractual dispute between the parties as to the breach of the Farmers notes, it does not extend to the postjudgment dispute here over whether the Eaton note proceeds were subject to attachment and execution to satisfy the judgment for the respondent and against the appellant in the underlying lawsuit.

▮ Having determined that the law of the state where the appellant and his for-

6. *Perry* cites "41 C.J.S. Husband and Wife § 466, p. 991 et seq., for the general rule." A cursory glance at volume 41 of the C.J.S. will reveal that volume 41 has no page 991, and that the chapter titled "Husband and Wife" has no § 466. Thus, it can be concluded that there was some sort of a typographical or clerical error in identifying the relevant section of that chapter, which is actually § 125, concerning what law governs the property rights of a husband and wife. In that section, on p. 425 of volume 41 under note 24, the general rule is stated that "[w]here the issue under consideration is the classification of movable property in terms of whether it is community or separate property of a married couple, court [sic] must look to the law of the parties' domicile at the time of the acquisition."

mer wife were domiciled when the appellant acquired an interest in the Eaton note controls in determining whether the appellant's interest in the Eaton note was as a tenant by the entirety or as a tenant in common, we turn to the issue of whether Kansas or Missouri was the domiciliary state of the Russells at the time of their acquisition of their interests in the Eaton note.

It goes without saying that the appellant acquired his interest in the Eaton note at the time of its execution by Eaton. As to the date of the note's execution, the note indicates that it was executed on October 4, 2000. As to where the Russells were domiciled at that time, the note recites the fact that the note payments were to be made to the appellant at 8909 Mohawk Road, Leawood, Kansas 66206. That address was the one designated in the 1996, 1997, and 1998 individual tax returns of the Russells, and a personal financial statement, dated January 14, 2000, as their residence address. In addition, the Russells both admitted in their answers to the respondent's petition that on November 7, 2000, their residence was 8909 Mohawk Road, Leawood, Kansas 66206. Although the appellant testified at the writ of attachment hearing on March 1, 2001, that he ceased to reside at the Leawood address *sometime* in October of 2000, the trial court was free to disbelieve him. *In re A.A.R.*, 39 S.W.3d 847, 850 (Mo.App.2001). And, even if the court chose to believe the appellant's testimony, it does not directly contradict the evidence that he resided in Kansas on October 4, 2000, when the Eaton note was executed. Thus, applying the conflict of laws doctrine of this state that the domicile state at the time that movable personal property is acquired is controlling, we find that Kansas law would apply in determining the appellant's interest in the Eaton note.

In Missouri, a conveyance to husband and wife jointly is presumed to create a tenancy by the entirety. *Greeson v. Ace Pipe Cleaning, Inc.*, 830 S.W.2d 444, 447 (Mo.App.1992). Kansas, however, does not recognize tenancy by the entirety as to real or personal property. *Walnut Valley State Bank v. Stovall*, 1 Kan.App.2d 421, 566 P.2d 33, 37 (1977) (reversed on other grounds in *Walnut Valley State Bank v. Stovall*, 223 Kan. 459, 574 P.2d 1382, 1386 (1978)). Rather, Kansas law, specifically § 58–501 Kan. Stat. Ann. (1994), provides:

> Real or personal property granted or devised to two or more persons including a grant or devise to a husband and wife shall create in them a tenancy in common with respect to such property unless the language used in such grant or devise makes it clear that a joint tenancy was intended to be created.

As stated by the Kansas Supreme Court in *Riggs v. Snell*, 186 Kan. 355, 350 P.2d 54, 56 (1960):

> The provisions of this statute leave no doubt of the fact that presumptions are almost wholly in favor of tenancies in common, and that in order to overcome such presumption the language used in a grant or devise must make it *clear* that a joint tenancy was intended to be created.

After reading the Eaton note, it is abundantly clear that it is totally void of any language indicating that a joint tenancy was intended. In identifying the appellant and his wife as "the Lender," it simply reads that "[t]he Lender is: HARLAN R. RUSSELL and ROSE M. RUSSELL." Thus, pursuant to Kansas law, the appellant's interest in the Eaton note, at the time of attachment and execution in satisfaction of the respondent's judgment, was as a tenant in common.

As we discussed, *supra,* the forum state, in this case Missouri, as a matter of procedure, controls which classifications of property are subject to attachment and execution. *Ruhe v. Buck,* 124 Mo. 178, 27 S.W. 412, 412 (1894); *State ex rel. McCubbin,* 349 S.W.2d at 468; 16 Am. Jur.2d *Conflict of Laws* § 151 (1998); 6 Am.Jur.2d *Attachment and Garnishment* § 14 (1999); 15A C.J.S. *Conflict of Laws* § 41 (2002). In that regard, it is well settled in this state that a judgment creditor, in satisfaction of the judgment debt, can attach the interest of a judgment debtor in personal property that the debtor holds as a tenant in common with a spouse, but not property held as a tenant by the entirety. *Lockett v. Musterman,* 854 S.W.2d 831, 834 (Mo.App.1993). Thus, because the trial court properly determined here, under Kansas law, that the appellant's interest in the Eaton note was as a tenant in common, the court did not err in failing to sustain the appellant's motion to dissolve the respondent's writ of attachment as to the proceeds.

Points II–VI are denied.

## II.

In Point VII, the appellant claims that the trial court erred in finding that he had a fifty-percent interest in the Eaton note as a tenant in common with Ms. Russell that was subject to attachment and execution because it misapplied applicable Kansas law. Specifically, he claims that under Kansas law, the trial court was required to hear evidence and determine the actual interest the appellant had in the note and could not rely on a presumption that he had an equal interest in the proceeds with Ms. Russell. We disagree.

The issue raised in this point was not raised by the appellant in his motion to dissolve the prejudgment writ of attachment or in his motion for new trial. As such, it was not properly preserved for appeal. *McMahan v. Mo. Dep't of Soc. Servs.,* 980 S.W.2d 120, 126–27 (Mo.App. 1998). Thus, our only review would be for plain error under Rule 84.13(c), which reads: "Plain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."

The plain error rule should be used sparingly and does not justify a review of every trial error that has not been properly preserved for appellate review. *Messina v. Prather,* 42 S.W.3d 753, 763 (Mo.App.2001). In determining whether to exercise its discretion to provide plain error review, the appellate court looks to determine whether on the face of the appellant's claim substantial grounds exist for believing that the trial court committed a "plain" error, which resulted in manifest injustice or a miscarriage of justice. *Bedwell v. Bedwell,* 51 S.W.3d 39, 43 (Mo.App. 2001). "Plain" error for purposes of Rule 84.13(c), is error that is evident, obvious and clear. *Id.* If the court chooses to exercise its discretion to conduct plain error review, the process involves two steps. First, the court must determine whether the trial court committed error, affecting substantial rights, that was evident, obvious and clear. *State v. Hibler,* 21 S.W.3d 87, 96 (Mo.App.2000). As in the case of regular error, not every plain error requires reversal. In the case of regular error, to be reversible, the error must have prejudiced the appellant. *Coats v. Hickman,* 11 S.W.3d 798, 807 (Mo.App. 1999). Likewise, in the case of plain error, the error must have prejudiced the appellant, except that such prejudice must rise to the higher level of manifest injustice or a miscarriage of justice. *Slankard v.*

*Thomas,* 912 S.W.2d 619, 628 (Mo.App. 1995).

 It is well settled in Kansas law that the creation of a tenancy in common creates a rebuttable presumption of equal ownership of the property, which prevails in the absence of proof of ownership in some other proportion. *Walnut Valley State Bank,* 574 P.2d at 1386. Thus, the burden was on the appellant to rebut that presumption by demonstrating that he had an interest in the Eaton note other than as an equal owner. *Id.* In that regard, the record clearly reflects that the appellant offered no evidence at the hearing to rebut the presumption. As such, the trial court could have properly relied on that presumption in refusing to dissolve the prejudgment attachment. We, therefore, decline plain error review of this point.

Point denied.

### III.

 In Point I, the appellant claims that the trial court erred in overruling his motion to dissolve the prejudgment writ of attachment of the Eaton note because the writ was fatally deficient on its face. Specifically, he claims that: (1) the writ failed to recite, as required by § 525.290, where the underlying debt was contracted and where the cause of action arose; and (2) the supporting affidavit for the writ contained impermissible hearsay evidence as to the address of the judgment debtor, the appellant. We disagree.

The form of a writ of attachment is set out in Rule 85.05:

A writ of attachment shall be in the following form:

The State of Missouri to any sheriff of any county in the State of Missouri. Whereas, AB has on the _____ day of _____, 19__, obtained a writ of attachment against CD, you are commanded to execute this writ by attaching the property of CD or as much thereof as will be sufficient to satisfy the sum $_____, with interest and costs and on the _____ day of _____, 19__, certify to this court how you executed this writ.

———

EF, Clerk

The writ of attachment issued in this case reads as follows:

The State of Missouri to the Sheriff of Platte County, Missouri:

WHEREAS, Farmers Exchange Bank has on the 1st day of March, 2001, obtained a writ of attachment against Harlan R. Russell, you are commanded to execute this writ by attaching the property of Harlan R. Russell, including but not limited to, the Promissory Note, dated October 4, 2000, which was executed by Eaton Investments, L.L.C. in favor of Mr. Russell, or as much thereof as will be sufficient to satisfy the sum of $446,576.06, with interest and costs and on the 5th day of April, 2001, certify to this court how you executed this writ.

The writ, which was dated March 1, 2001, was signed by the Clerk of the Circuit Court of Platte County, Missouri.

The prejudgment writ of attachment challenged by the appellant is clearly in accord with the form provided in Rule 85.05. Nevertheless, the appellant argues that the writ should also have included the additional information as to where the underlying debt was contracted and cause of action arose, citing *Martone v. Bryan,* 233 Mo.App. 1249, 130 S.W.2d 962 (1939). The appellant's reliance on that case is misplaced. In *Martone,* the court was construing § 1424, RSMo 1929, a prior version of § 525.290, which provided that:

No wages shall be attached or garnished before personal service is had or obtained upon the defendant, unless the

suit be brought in the county where the defendant resides, or in the county where the debt is contracted and the cause of action arose or accrued, and in cities over one hundred thousand inhabitants in the 'city' where the defendant resides or the debt is contracted and the cause of action accrued: *Provided,* the petition or statement filed in the cause and the writ or summons of attachment or garnishment shall affirmatively show the place where the defendant resides and the place where the debt is contracted and the cause of action arose.

Section 1424 and its predecessor, § 525.290, pertain specifically to the garnishment of wages, not the attachment of note proceeds and similar personal property. Thus, the discussion of the *Martone* court was limited to the statutory requirements of garnishments. The appellant does not attempt to persuade us as to why those requirements should apply here, and we cannot think of a basis for doing so.

■ As to the appellant's claim in this point that the prejudgment writ of attachment was also void because it was issued in reliance on a supporting affidavit containing inadmissible hearsay, he points to paragraph 22 of the supporting affidavit of Bradley D. Richerson, an executive vice president of the respondent. In that paragraph, Richerson states: "Harlan R. Russell is a resident of the State of Kansas." The appellant contends that this was hearsay in that it was based on the out-of-court statements of the appellant contained in loan documents of appellant as to his residence address. The appellant's claim is without merit.

■ A statement of a party-opponent is admissible, despite the hearsay rule, if it meets the following requirements: (1) it is a conscious or voluntary acknowledgment by a party-opponent of the existence of certain facts; (2) the matter acknowledged is relevant to the cause of the party offering the admission; and (3) the matter acknowledged is unfavorable to, or inconsistent with, the position now taken by the party-opponent. *In re Mirabile,* 975 S.W.2d 936, 938–39 (Mo. *banc* 1998). There is no question that the appellant's statements in the loan application documents meet this three-part test. First, they are the voluntary acknowledgement of the fact that his residence was in Kansas. Second, the issue of whether the appellant's residence is in Kansas is relevant to the respondent's cause in that, as explained in our disposition of the appellant's subsequent points on appeal, the issue of his residency is relevant to conflict of laws considerations which govern whether the respondent could attach the appellant's interest in the proceeds of the Eaton note. Third, the appellant's statements in the loan application documents are inconsistent with his subsequent position that he was a resident of the state of Missouri.

Point denied.

### Conclusion

The judgment of the Circuit Court of Platte County attaching the appellant's interest in the Eaton note proceeds and ordering execution thereon in satisfaction of the respondent's judgment for damages against the appellant is affirmed.

LOWENSTEIN and HARDWICK, JJ., concur.