No. 48,306

WALNUT VALLEY STATE BANK, a Corporation, *Appellant,* v. MERLE J.
STOVALL and EMMA M. STOVALL a/k/a EMMA M. MEDLIN, *Appel-
lee,* and TOWANDA STATE BANK, *Garnishee, Defendant.*

(574 P.2d 1382)

Opinion filed February 25, 1978.

*Morgan Metcalf,* of Coutts, Coutts & Metcalf, of El Dorado, argued the cause
and was on the brief for the appellant.

No appearance by the appellee.

The opinion of the court was delivered by

OWSLEY, J.: This is an appeal from an order dissolving a
garnishment. The decision of the trial court was affirmed by the
Kansas Court of Appeals. See, *Walnut Valley State Bank v.
Stovall,* 1 Kan. App. 2d 421, 566 P.2d 33. This court granted
review.

Plaintiff first contends the trial court should have dismissed the
appeal from the county court to the district court. The basis of the
motion to dismiss was the failure to pay the docket fee prior to the
hearing of the appeal and failure to provide surety on the appeal
bond. Plaintiff also claims prejudicial error in the admission of
certain evidence. Each of these points was considered by the
court of appeals. The court of appeals concluded they were not
grounds for reversal. We adhere to its opinion on these points.

The remaining issue is one of first impression. It involves the
right and the extent of the right of a judgment creditor to gar-
nishee a joint tenancy bank account to satisfy a judgment against
one of the joint tenants. The court of appeals found such an
account may be garnished by the creditor to the extent of the
debtor's equitable interest in the account.

The facts relative to this issue are as follows: Plaintiff obtained
judgment against defendants Merle J. and Emma M. Stovall.

Thereafter, the Stovalls were divorced and Emma married Archer B. Medlin. The Medlins established a joint checking account at the Towanda State Bank and each of them signed the bank signature card. Thereafter, and upon application of plaintiff, an order of garnishment was issued to the garnishee, which answered stating that Emma had a checking account with that bank in the amount of $411.52. Three days later, Emma moved to vacate the order of garnishment, which motion was overruled by the county court. Emma appealed to the district court, which heard the matter and entered judgment sustaining the motion to vacate and to set aside the order of garnishment, and assessed cost to plaintiff.

The trial judge issued his opinion letter to counsel, which contained his findings of fact as follows:

"I have read the citations which you gentlemen provided me and find that the garnishment of the bank account held by the Towanda State Bank in the joint account of Archer B. Medlin and Emma Maye Medlin should be set aside. From this ruling it is obvious that I do not reach the same conclusions as the author of the note in the Washburn Law Journal and frankly I was more impressed with the cases set forth at 11 A.L.R. 3, Page 1487 under the section heading of 'Where the Funds in the Act Belong to the Husband Alone.' I feel that this is the situation here and that the funds in said bank account are the property of Mr. Medlin and that the account was established as a joint account for the convenience of Mr. Medlin when he was on the road driving a truck. It is the Court's recollection that it has been at least 6 months since Emma Medlin has been employed and that any loan made by the Liberty Loan Corporation of Hutchinson, Kansas was made primarily to Archer Medlin in March of 1975 and was not in fact made to Emma Medlin."

Through statutory enactment the legislature has sought to limit the creation of joint tenancy agreements unless by clear and convincing evidence the parties to the agreement show the intent to create such an estate. (K.S.A. 58-501). A joint tenancy bank account gives any party on the account a complete power of disposal. Upon death the survivor or survivors take all, even against lawful heirs of the decedent. Financial advisers not versed in the intricacies of the law have convinced many unlearned persons that a joint tenancy agreement is the answer to estate planning. While a joint tenancy has many laudable uses, it is not a panacea. Many injustices have resulted through use of the device. Upon proper showing we have imposed constructive trusts on property in the hands of a surviving joint tenant in order to avoid unintended results. (*Winsor v. Powell,* 209 Kan. 292, 497

P.2d 292; *Agrelius v. Mohesky,* 208 Kan. 790, 494 P.2d 1095; *Grubb, Administrator v. Grubb,* 208 Kan. 484, 493 P.2d 189.)

We have considered the cases cited at 11 A.L.R.3d 1465 and recognize there is support for the position that none of the funds in a joint tenancy account can be garnished, as well as support for the position that all the funds can be garnished. Any argument in support of either of these positions may be eliminated by reference to K.S.A. 58-501(*c*):

". . . The provisions of this act shall apply to all estates in joint tenancy in either real or personal property heretofore or hereafter created and nothing herein contained shall prevent execution, levy and sale of the interest of a judgment debtor in such estates and such sale shall constitute a severance."

The statute specifically provides the right to levy on personal property to the extent of the "interest of a judgment debtor." We must construe the phrase "interest of a judgment debtor." The court of appeals has stated the phrase means the equitable interest in joint tenancy property. Its affirmance of the trial court's decision is based on the trial court's finding of fact that the judgment debtor had no equitable interest in the joint tenancy account. We do not believe the solution is that simple. We are concerned with the ownership of a joint tenancy bank account between two or more joint tenants and the burden of proof if such ownership is challenged. In *Miller v. Miller,* 222 Kan. 317, 564 P.2d 524, we considered the ownership of a joint tenancy property conveyed by a father to himself, his son, and his daughter-in-law. We said:

"The record establishes that each of the three parties—Jessie, Ima Kaye, and Richard—owned an undivided one-third interest in this tract at the time suit was commenced, and had owned such interests for almost ten years, since the recording of the deed in 1965. Jessie made a gift of one-third interest to his son and of a like interest to his daughter-in-law when the property was acquired. That Jessie paid the entire purchase price is immaterial." (p. 321.)

The statement in *Miller,* "[t]hat Jessie paid the entire purchase price is immaterial," is too broad. It would appear that when a party to a joint tenancy attempts to prove an intent to own joint tenancy property other than equally between the parties the issue of who provided the purchase price would be material. Support for this statement is found in *Schierenberg v. Hodges,* 221 Kan. 64, 558 P.2d 133, where we said:

"It is well established in this jurisdiction that, absent fraud, one spouse may make an *inter vivos* transfer of his or her own personal property to another person

outright or to himself and another person in joint tenancy without contravening the statutory rights of a surviving spouse under K.S.A. 59-602. *Malone v. Sullivan,* 136 Kan. 193, 14 P.2d 647; *In re Estate of Fast,* 169 Kan. 238, 218 P.2d 184; *Eastman, Administrator v. Mendrick,* 218 Kan. 78, 542 P.2d 347. The plaintiff's deceased spouse may well have lawfully transferred the funds in question; the funds may have come from her earnings, or they may have been accumulated solely by the plaintiff. Such questions have not been litigated or determined. We conclude that the court should not have sustained the motion for summary judgment." (p. 66.)

Severance of the joint tenancy into a tenancy in common between a husband and wife gives rise to a rebuttable presumption of equal ownership; that is, the husband and wife each own one-half of the account. Such a presumption is created on the theory of donative intent. In *Norcross v. 1016 Fifth Avenue Co., Inc.,* 123 N.J. Eq. 94, 196 A. 446 (1938), the court explained the theory in this manner:

"There seems to be abundant legal support to the inference that the opening of an account, wherein each depositor agrees that all the moneys deposited are to belong to the parties as joint tenants, is *prima facie* evidence of donative intent. *New Jersey Title Guarantee and Trust Co. v. Archibald,* 91 N.J. Eq. 82. In the last cited case, the court of errors and appeals, in part, said:

" 'We think that where, as here, moneys belonging originally either wholly to the mother, or in part to her and in part to her daughter, are deposited by them in a bank in their joint names, and at the same time they both sign and deliver to the bank a writing stating that 'This account and all money to be credited to it belongs to us as joint tenants and will be the absolute property of the survivor of us; either and the survivor to draw,' and upon the death of the mother the undrawn moneys belong to the surviving daughter.

. . . . . . . . . . . . . . . . . . .

" 'The contract entered into by the bank with the mother and her daughter exhibited a donative purpose from donor to donee (not one merely for use and convenience of the donor) and hence constituted a valid gift.' *Commonwealth Trust Co. v. Grobel,* 93 N.J. Eq. 78; *Commercial Trust Co. v. White,* 99 N.J. Eq. 119; affirmed, 100 N.J. Eq. 561; *Trenton Saving Fund Society v. Byrnes,* 110 N.J. Eq. 617; *Dover Trust Co. v. Brooks,* 111 N.J. Eq. 40; *McGee v. McGee,* 81 N.J. Eq. 190; *Rosecrans v. Rosecrans,* 99 N.J. Eq. 176; *Mendelsohn v. Mendelsohn,* 106 N.J. Eq. 537." (p. 98.)

A similar result has been reached in Michigan. In *Murphy v. Michigan Trust Co.,* 221 Mich. 243, 190 N.W. 698 (1922), the Supreme Court stated:

"We must hold the deposits constituted plaintiffs joint tenants. As joint tenants the ownership of Mr. Murphy is severable for the purpose of meeting the demands of creditors.

"In the absence of proof establishing their contributions toward the deposits

the presumption prevails that plaintiffs were equal contributors thereto and, therefore, equal owners. If the assignee did not want to accept such presumption the way was open to introduce testimony on the subject. We do not, however, have to rest the matter upon such presumption, as all the testimony in the case was to the effect that the principal contributor to the deposits was Mrs. Murphy. We can conceive of no reason why this joint claim for deposits made in the bank should not be allowed, and payment, if any, to Mr. Murphy withheld by order of the court until his contingent liability to contribute as a partner is determined. The joint claim should have been allowed and the right of Mrs. Murphy therein determined as one-half thereof. . . ." (p. 246.)

In accord, *Czajkowski v. Lount,* 333 Mich. 156, 52 N.W.2d 642 (1952); *Sussex v. Snyder,* 307 Mich. 30, 11 N.W.2d 314 (1943); *Darst v. Awe,* 235 Mich. 1, 209 N.W. 65 (1926).

In *United States v. Third Nat. Bank & Trust Co.,* 111 F. Supp. 152, 156 (M.D. Pa. 1953), the court stated:

". . . The attachment of the interest of a joint tenant operates as a severance of the joint ownership, makes them tenants in common and terminates the right of survivorship. Dover Trust Co. v. Brooks, Court of Chancery of N.J., 111 N.J. Eq. 40, 160 A. 890; In re Erie Trust Co., 19 Erie, Pa., 469."

See also, *American Oil Co., Ap., v. Falconer et al.,* 136 Pa. Super. 598, 605, 8 A.2d 418 (1939).

We believe this presumption of equal ownership should prevail in the absence of proof of ownership in some other proportion. Anyone attacking equal ownership should assume the burden of proof. If the debtor can demonstrate that he has an interest less than an equal share of the account the burden is upon him to come forward with such evidence. By the same token the debtor's cotenant may come forward and demonstrate an ownership greater than the interest created by operation of the presumption upon severance. If it is within the power of the creditor-garnisher to demonstrate the debtor has an ownership greater than that of the other cotenant, the garnisher is entitled to claim the greater share upon proper proof.

The trial court found the garnishment must be dissolved because the wife had no interest in the account. Yet the record indicates she wrote nearly all the checks on the account and made numerous deposits, including the proceeds of a $483.18 loan taken out and signed by her and her present husband. The finding of the trial court that Emma Stovall had no interest in the account seems to stem from the fact the garnisher could not prove exactly what her interest was in the account at the time of the

garnishment, rather than from the fact she had absolutely no interest in the account. Without the presumption of equal ownership and applying the rule established by the court of appeals, the garnisher of a joint tenancy account can be defrauded by a debtor and the debtor's cotenants by the act of commingling deposits and withdrawals to the point that no one can determine the origin of the proceeds of the account at the time of garnishment.

We hold that a garnishment upon a joint tenancy bank account severs the joint tenancy, creating a tenancy in common. A rebuttable presumption of equal ownership between the cotenants remains intact. The burden of proof on a claim the account is owned other than equally between the cotenants lies with the party asserting such claim. If married persons wish to avoid the effect of this rule they may maintain their property separate from that of their spouses and receive the protection of K.S.A. 1977 Supp. 23-201, *et seq.*

We reverse the decision of the court of appeals on the issue of garnishment of joint tenancy accounts and remand the case to the trial court with directions to grant a new trial in accord with rules of law established herein.

Affirmed in part and reversed in part with directions.