No. 124,032

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JUDITH CLAEYS, TRUSTEE OF THE
CLAEYS REVOCABLE LIVING TRUST,
*Appellee*,

v.

DAVID CLAEYS and KENNETH CLAEYS,
*Appellants*.

SYLLABUS BY THE COURT

1.

Partition proceedings, which seek to fairly divide ownership interests in real property, are equitable in origin. District courts have broad discretion to determine how best to fairly divide those interests. When a cotenant has made improvements to the property, the court may adjust the division to apply a credit to that cotenant for his or her efforts, measured by the extent the improvement enhances the value of the land.

2.

An improvement is a valuable addition made to real property or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty, or utility or to adapt it for new or further purposes. An improvement need not involve structural additions and need not necessarily be visible as long as it enhances the value of the property.

Appeal from Marshall District Court; JOHN L. WEINGART, judge. Opinion filed April 29, 2022. Reversed and remanded with directions.

*Robert W. Coykendall* and *Sabrina K. Standifer*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, for appellants.

*Andrew J. Lohmann* and *Jason E. Brinegar*, of Galloway, Wiegers & Brinegar, P.A., of Marysville, for appellee.

Before MALONE, P.J., ATCHESON and WARNER, JJ.

WARNER, J.: Kenneth and David Claeys appeal the district court's decision denying their counterclaim in a real-property partition case against a trust administered by their sister-in-law, Judith Claeys. Kenneth and David assert the district court should have adjusted the equitable division of the property due to improvements they made to the property—namely, converting it from dry land to irrigated farmland—that increased its value. After reviewing the record and the parties' arguments, we agree that the evidence showed that Kenneth and David improved the land, and the district court erred when it found otherwise. We remand the case for a determination whether Kenneth and David should be granted an equitable offset for that improvement.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2012, three brothers—Kenneth, David, and Richard Claeys—inherited undivided one-third interests in two tracts of land after their father's death. The land consisted of a tract in Marshall County and a tract in Washington County. Since 1987, Kenneth rented and farmed the Marshall County property under a sharecropping arrangement with his father and, after his father died, his brothers. Under this arrangement, Kenneth farmed the property and received 60% of the crop yield; the remaining 40% was split among the landowners.

Not long after inheriting the land, Kenneth decided to irrigate part of the Marshall County property. Sixty-six acres were already flood-irrigated, but he decided to expand

2

the irrigated acreage by installing a large pivot system to irrigate another 126.55 acres. Kenneth had discussed the expansion with his father before his father died, and Kenneth knew that irrigating more of the land would result in a higher crop yield and a more profitable farm. He also knew that irrigated land was more valuable than dry land.

Kenneth bought a Reinke 10-tower pivot irrigation system for $83,200. He also spent over $10,000 on piping and a water meter necessary to operate the pivot system. And he secured a water permit to reroute water from a nearby river to the pivot system; without the permit, he could not use the new system to irrigate the extra acreage. David helped Kenneth install the system by helping dig and pay for the underground piping. The third brother, Richard, was aware of the new irrigation system but not involved in its acquisition or installation. Neither Richard nor his wife Judith ever contributed to the cost or installation of the pivot system, and Kenneth and David never asked for their permission or help.

Richard died at some point after Kenneth installed the irrigation system, and his undivided one-third interest in the land passed to a family trust under Judith's control. Judith subsequently filed a partition action against Kenneth and David, seeking to sever their joint ownership of the properties in Marshall and Washington counties. Kenneth and David counterclaimed, asserting that their improvements to the Marshall County tract unjustly enriched Judith and thus they were entitled to an offset in any partition to account for those improvements.

The district court appointed three commissioners to appraise the land so it could be divided. The commissioners valued the Washington County tract at $390,000 and the Marshall County tract—where Kenneth and David installed the irrigation system—at $2,065,000. The appraised value of the Marshall County tract did not include the Reinke irrigation equipment, but it did value the 126.55 acres as irrigated (not dry) land.

Judith elected to buy the Washington County tract, while Kenneth and David elected to buy the Marshall County tract—effectively resolving the initial partition action. But Kenneth and David's counterclaim remained. Because Judith's tract was smaller and less valuable than the Marshall County tract, Kenneth and David owed her $428,333 to account for her one-third interest in that property. The district court ordered $50,000 of that sum to be placed in escrow pending the counterclaim; Kenneth and David believed that the $50,000, which they felt represented Judith's one-third interest in the increased value from irrigation, should be credited against what they owed her.

The counterclaim proceeded to a one-day bench trial. The pretrial order framed the issues around the Reinke pivot-system equipment—whether the added irrigation system increased the value of the Marshall County tract and, if so, whether credit should be applied against Judith's portion to account for the increase. The evidence at trial was mostly uncontroverted. Kenneth and David explained the work they devoted to converting the tract to irrigable land, including securing the water permit and diverting the water to irrigate the land through the newly purchased irrigation equipment. Witnesses testified that irrigating the Marshall County tract increased its value—even excluding the value of the pivot system itself—between $500 and $2,800 per acre.

It was also undisputed that the pivot system was Kenneth's personal property that he could remove at any time. But as the court-appointed commissioners explained in their testimony, the pivot system was not what made the land more valuable. Rather, it was the fact that the land was now irrigated. In other words, irrigated land is worth more than dry land, and the continued preservation of those acres as irrigable land—through obtaining the water permit and taking steps to use that permit by irrigating the land in some way, regardless of the specific irrigation equipment used—is what makes the land more valuable for appraisal purposes.

The district court ruled for Judith on the counterclaim, finding that Kenneth and David had not shown they should receive a credit for the irrigation-driven value increase. The court recognized that Kansas law allows a cotenant credit for improvements a person makes to the land—measured by the amount the improvements increase the land's value when they happen without the other owners' permission. But instead of considering whether irrigating the land improved its value, the district court limited its consideration to the specific pivot system Kenneth had purchased. According to the district court, this system—the Reinke pivot equipment—was Kenneth's personal property and thus not an "improvement." The district court therefore denied Kenneth and David's counterclaim and awarded the $50,000 in escrow to Judith. Kenneth and David appeal.

DISCUSSION

Partition proceedings, which seek to fairly divide ownership interests in property, are equitable in origin. As such, district courts have broad discretion to determine how best to fairly divide those interests. See K.S.A. 60-1003(d); *Einsel v. Einsel*, 304 Kan. 567, 577, 374 P.3d 612 (2016). And appellate courts review district courts' exercise of these broad powers for an abuse of discretion. 304 Kan. 567, Syl. ¶ 1. A court abuses its discretion when it acts in a way that no reasonable court would under the circumstances or bases its decision on a factual or legal error. 304 Kan. 567, Syl. ¶ 1. Legal conclusions are subject to unlimited review. 304 Kan. at 579.

When partitioning real property, a district court has "full power to make any order not inconsistent with the provisions of this article that may be necessary to make a just and equitable partition between the parties, and to secure their respective interests." K.S.A. 60-1003(d). To that end, the Kansas Supreme Court has recognized that "[i]mprovements added to a property by one of several cotenants may be the subject of a credit to that cotenant," measured by the extent the improvement enhances the property value. *Miller v. Miller*, 222 Kan. 317, Syl. ¶ 5, 564 P.2d 524 (1977).

5

Kansas law recognizes that improvements may take many forms. At its base, an improvement is "'[a] valuable addition made to . . . property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes.'" *Haz-Mat Response, Inc. v. Certified Waste Services Ltd.*, 259 Kan. 166, Syl. ¶ 4, 910 P.2d 839 (1996) (quoting Black's Law Dictionary 757 [6th ed. 1990]). The determination as to whether some circumstance improves the land must be rooted in the facts of each case. 259 Kan. 166, Syl. ¶ 3. While many cases discuss improvements as structural additions (such as adding a barn or an addition to a residence), there is no requirement that an improvement take this form. In fact, "the improvement of real property need not necessarily be visible, although in most instances it is." 259 Kan. 166, Syl. ¶ 3. Ultimately, the improvement must be some circumstance that "enhance[s] the value of the property." 259 Kan. 166, Syl. ¶ 3.

Applying these principles here, the district court erred when it found that Kenneth and David did not improve the land when they installed an irrigation system, changing the land's status from dry to irrigated. The district court focused solely on one aspect of the irrigation system—the physical, above-ground equipment—but Kansas law requires a broader inquiry, looking beyond just physical structures and equipment.

Contrary to the district court's findings and Judith's assertions on appeal, improvements are not limited to physical additions. Nor does it matter that obtaining a water right and changing a property's status from dry land to irrigated land are not physical or visible improvements. The district court thus committed an error of law when it focused exclusively on the physical equipment and its status as personal property. Indeed, Kenneth and David acknowledged that the equipment was personal property, and the court-appointed appraisers did not include the equipment in their land valuation.

6

There was no basis for the court to conclude that the equipment's status as personal property meant the land had not been improved.

Instead, the undisputed evidence presented at the bench trial showed that Kenneth and David improved the property by converting over 126 acres from dry land to irrigated land. This conversion enhanced the property's condition by increasing the farmland's productivity and was not a mere repair or replacement. Kenneth and David expended significant labor and capital, securing the water permit, purchasing an irrigation system and related equipment, and connecting the system to the water source. Kenneth explained that he intended to enhance the land's utility and adapt it for further purposes because the new irrigation system—which supplemented preexisting flood irrigation—allowed for a more productive farm and an increased crop yield. And the witnesses at the trial unanimously agreed that irrigated land is more valuable than unirrigated property, even though their opinions varied as to how much more valuable the land now was.

Judith points to the evidence that the increased land value is attributable to the water permit, suggesting that simply securing a water permit cannot constitute an improvement that results in such a difference in land value. But this argument is unpersuasive for a number of reasons. Most notably, the evidence at trial was uncontroverted that irrigated land was more valuable than unirrigated property, and all appraisers agreed that the difference in value was only possible through obtaining a water permit. Moreover, under Kansas law, the continued right to use the water permit is closely tied to the efforts to actively irrigate the land. A proposed diversion works—here, a pivot irrigation system—is key to the permitting process. See K.S.A. 82a-712. When the State grants a permit application, it is allowing the applicant "to proceed with the construction of the proposed diversion works and to proceed with all steps necessary for the application of the water to the approved and proposed beneficial use." K.S.A. 82a-712. And to keep a permit or water right, a person must use it. K.S.A. 82a-718(a). Here, the water permit was one key aspect of the improvement—converting dry land to

7

irrigated land—and the value increase associated with the permit is just one consideration when determining whether there is an improvement.

In sum, Kenneth and David improved the Marshall County tract when they converted the 126.55 acres to irrigated land. They obtained a water permit and actively used that permit by irrigating the land—buying and installing the Reinke system, installing underground piping to connect to the water source, and using that water to increase the property's crop yield. Their efforts boosted the value and utility of the land. Under these circumstances, the district court erred when it found there was no improvement and denied Kenneth and David's counterclaim on that basis. We thus remand the case to the district court to determine whether to award credit for this improvement based on its assessment of the evidence previously presented at trial.

Before concluding, we pause to address the parties' arguments regarding the Kansas Supreme Court's decision in *Miller* and the scope of the district court's discretion on remand. See 222 Kan. 317, Syl. ¶ 5. Kansas law allows the district court "to make any order . . . necessary to make a just and equitable partition between the parties." K.S.A. 60-1003(d). The district court abused its discretion in its original ruling because it failed to consider whether efforts other than the purchasing of the specific pivot system here improved the value of the property. In other words, the court did not apply the correct legal standard defining improvements in this state.

Kansas courts have long recognized that they can adjust the equities in a partition case to account for improvements to the property. See, e.g., *Ames v. Ames*, 170 Kan. 227, 230-31, 225 P.2d 85 (1950); *Sarbach v. Newell*, 28 Kan. 642, 645-47 (1882). This power reflects the broad equitable discretion district courts have in partition proceedings. See K.S.A. 60-1003(d). When partitioning property, district courts have "the same powers as were exercised by chancery courts under equity practice, including full power to settle all

8

questions involved on just and equitable principles." *Knutson v. Clark*, 169 Kan. 205, Syl. ¶ 2, 217 P.2d 1067 (1950).

But awarding credit for improvements is not required when some other circumstance would render an adjustment unfair. The *Miller* decision is one of many showing that courts "may" adjust the presumed division of property to account for the various equities in a case. 222 Kan. 317, Syl. ¶ 5. That language is permissive; it reflects courts' broad equitable powers in this area. Indeed, the most recent Kansas Supreme Court decision addressing equitable adjustments in partition cases confirms that *Miller* does not *require* that credit be given, but simply recognizes that district courts *may* award it. See *Denton v. Lazenby*, 255 Kan. 860, 863-64, 879 P.2d 607 (1994). There, the court recognized that the right to credit for improvements "is not a legal right but arises from principles of equity." 255 Kan. 860, Syl. ¶ 2. The Kansas Supreme Court continued to refer to *Miller*'s articulation as the "general rule," but the court did not adjust the equitable distribution in that case because both parties had agreed and contributed to the improvement. 255 Kan. at 862. In other words, the court confirmed that equitable considerations drive the decision whether to award credit when a cotenant makes an improvement to the property. 255 Kan. at 863-64.

We read *Miller* not as a bright-line rule requiring credit when there is an improvement, but as simply recognizing that a district court can adjust the equities as it sees fit during a partition proceeding. When one party has improved the land, the court can certainly consider those efforts and improvements as it determines how to equitably partition the real property. Thus, the district court's decision on remand should take into account whether to adjust the amount Kenneth and David owe Judith, based on the partition of the property, in light of Kenneth and David's improvement, as well as any other equitable considerations appropriate to the fair division of the land.

Reversed and remanded with directions.

9