NOT DESIGNATED FOR PUBLICATION

No. 127,923

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ISAIAH M. RIDER,
*Appellee*,

v.

MICHELLE R. RIDER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; K. CHRISTOPHER JAYARAM, judge. Oral argument held October 14, 2025. Opinion filed December 5, 2025. Affirmed.

*Robert M. Pitkin*, of Horn Aylward & Bandy, L.L.C., of Kansas City, Missouri, for appellant.

*Danielle N. Davey*, Downing, Davey, Vokins & Mann, LLC, of Lawrence, for appellee.

Before HURST, P.J., GARDNER and BOLTON FLEMING, JJ.

PER CURIAM:  Isaiah M. Rider filed a partition action in district court over a house he owned with his mother, Michelle R. Rider. The parties purchased the home as joint tenants with right of survivorship. After a bench trial, the district court found the parties equally owned the property and that partition was proper. The district court also found that Michelle did not prove she should receive more than 50% of the property's proceeds or that the sale of the house would result in an extraordinary hardship to her under K.S.A. 60-1003(d). On appeal, Michelle argues that the district court abused its discretion in making each of these decisions. Finding no error, we affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

Isaiah filed a partition action in district court on July 28, 2022, concerning a home owned by Isaiah and his mother, Michelle. Isaiah filed the action because he no longer wished to own property in Kansas, and the relationship between Isaiah and Michelle had deteriorated. When the parties could not reach an agreement, a bench trial was held to determine the interests of the parties and the disposition of the property.

The evidence at trial was that when Isaiah turned 18 years old in 2015, he received a large settlement unrelated to this action. Using a portion of those proceeds, Isaiah made a large gift to Michelle.

That same year, Isaiah and Michelle purchased a house in Lenexa, Kansas, which is the subject of this suit. The property was purchased on December 11, 2015, for $514,500. Michelle paid $3,000 as earnest money. At closing, Isaiah paid $340,000, and Michelle paid $172,294.95. The property was initially improperly titled to Isaiah and Michelle as husband and wife. That was remedied by a corrective quit claim deed filed on February 24, 2016. The deed lists Isaiah and Michelle as joint tenants with rights of survivorship.

Michelle testified at trial that she has lived continuously in the residence since 2015. Isaiah testified he lived there "periodically." Isaiah and his fiancée, Kiara, also lived at the residence from August to October 2020. In March of 2022, Isaiah and Kiara moved to Colorado. Michelle testified that she was relying on "gracious friends that are helping me," as well as help from her parents, to pay her bills.

Michelle testified that the property was her home. Michelle and Isaiah did not have an agreement on sharing bills or expenses. Michelle stated that she paid all household bills, as well as bills for repairs to the property. Michelle submitted statements

2

and receipts to show the payments she made. The parties both provided extensive testimony about the day-to-day expenses of the household, as well as property taxes, home insurance, and homeowner's association dues. There was evidence that at different times, both parties significantly contributed to these expenses. And evidence confirmed both parties contributed to major repairs of the property such as replacement of the garage door in 2018 and replacement of the air conditioner in 2020. There was no evidence at trial of any addition or enhancement that was made to the home after its purchase in 2015.

A real estate broker, Larry Northrup, testified about the condition of the house and made recommendations for repairs that would help the sale of the property. To get the best price for the home, he testified the exterior could use "some simple landscaping" and a fence. He stated the inside had a "nice floor plan" and was in fair to good condition. He did note some damage that would need to be remedied before the property was placed on the market, including new carpet, some drywall repair, and paint.

After hearing the evidence, the district court found the parties owned the property jointly, partition was warranted, and Isaiah and Michelle were each entitled to 50% of the proceeds from the sale. The district court also determined that Michelle had not made any enhancement to the property that justified a division of proceeds from the sale in her favor. Finally, the district court held that Michelle did not carry her burden of proof that the sale of the house would result in an extraordinary hardship. Michelle timely appeals.

ANALYSIS

*Standard of Review*

Partition proceedings are used to equitably divide property between parties. K.S.A. 60-1003(d). Since the action is based in equity, the district court has broad discretion to

3

determine how to divide the various interests of the parties. An abuse of discretion standard applies to each of Michelle's three claims on appeal. The Kansas Supreme Court has explained abuse of discretion as follows:

> "'Judicial discretion is abused if judicial action (1) is arbitrary, fanciful, or unreasonable, i.e., if no reasonable person would have taken the view adopted by the trial court; (2) is based on an error of law, i.e., if the discretion is guided by an erroneous legal conclusion; or (3) is based on an error of fact, i.e., if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based.'" *Einsel v. Einsel*, 304 Kan. 567, 578, 374 P.3d 612 (2016).

The "appellate court reviews a district court's exercise of powers in a partition proceeding under an abuse of discretion standard of review." *Einsel*, 304 Kan. at 578. See also *Claeys v. Claeys*, 62 Kan. App. 2d 196, 199, 510 P.3d 1166 (2022).

### DID THE DISTRICT COURT ABUSE ITS DISCRETION BY FINDING THE PARTIES HAD EQUAL INTEREST AND ORDERING PARTITION?

In Kansas, partition actions are controlled by K.S.A. 60-1003. That statute requires that a district court "shall first determine and make an order specifying the interest of the respective parties and directing partition." K.S.A. 60-1003(c)(1).

Put another way, to determine whether partition is appropriate, the district court must first determine the interests of all property owners. *Miller v. Miller*, 222 Kan. 317, 321, 564 P.2d 524 (1977). The property subject to this action is titled in Isaiah and Michelle's name as joint tenants with rights of survivorship. When a title is jointly held, there is a presumption that the percentage of ownership is equal. "Equal ownership between joint tenants is presumed but is rebuttable." *M & I Marshall & Ilsley Bank v. Higdon*, 319 Kan. 572, 580, 556 P.3d 498, 504 (2024). "The burden of proof on a claim the account is owned other than equally between the cotenants lies with the party

4

asserting such claim." *Walnut Valley State Bank v. Stovall,* 223 Kan. 459, 464, 574 P.2d 1382 (1978).

*Bare Legal Title*

Michelle first alleges that Isaiah held only "bare legal title" to the property. Michelle concedes that equal ownership between joint tenants is presumed. *Higdon*, 319 Kan. at 580. But Michelle cites *In re Crouch C Stores, Inc.,* 120 B.R. 178, 180 (Bankr. D. Kan. 1990) to argue that the joint tenancy in this case was created as an estate planning device. Michelle points out that *Crouch* involved a joint tenancy between the debtor and her mother over the mother's residence that "was created as an estate planning device to avoid probate." 120 B.R. at 180. In *Crouch*, the bankruptcy court found that the debtor had "no equitable interest in her mother's property" and instead only had "merely a bare legal title to the property." 120 B.R. at 180.

The present case is distinguishable for two reasons. First, *Crouch* was a bankruptcy case filed in federal court and is at most persuasive authority. Second, the facts here are vastly different than in *Crouch.* 120 B.R. at 180.

Michelle argues the property at issue was titled as joint tenants with right of survivorship only for estate planning purposes. She asserts she does not have an estate plan, has no other significant assets, and Isaiah is her only heir. Michelle testified that all of her assets were set to transfer on death, and she did not put the house solely in her name because "of the transfer on death." She also asserts Isaiah did not act like a co-owner because he did not want to pay for utilities when he was not at the residence, and he only lived there sporadically. Michelle asserts these facts demonstrate the parties' intent that the property was not meant to be held jointly and that Isaiah possesses only "bare legal title" to the property.

5

While Michelle asserts title to the property was joint for estate planning, she does not provide any evidence to support her claim except her testimony alleging that was the plan. The district court considered Michelle's testimony in its decision.

The district court also considered Isaiah's testimony. In contrast to Michelle's testimony, Isaiah testified that originally, he and his mother "were looking for a house together." They had previously been living together in a home in Missouri. Isaiah paid $340,000.00 of the purchase price, and Michelle paid $175,294.95. Isaiah stated that he paid more of the purchase price because he "had the funds available," but the additional funds were not intended as a gift. Isaiah believed that both he and his mother owned the property, but that he owned more since he paid more of the purchase price. Isaiah believed the property was an investment. In *Walnut Valley State Bank*, the Kansas Supreme Court noted that "when a party to a joint tenancy attempts to prove an intent to own joint tenancy property other than equally between the parties, the issue of who provided the purchase price would be material." 223 Kan. at 461.

In addition to paying a significant share of the purchase price, Isaiah lived at the residence "periodically" from the time of purchase, including a period in 2020 that he and his fiancée Kiara lived there. Isaiah also testified that he paid property insurance and taxes over several years and paid for the replacement of a garage door and air conditioner. These facts controvert Michelle's assertion that the purchase of the home as joint tenants with rights of survivorship was simply an estate planning tool.

The district court considered the testimony of both Michelle and Isaiah in reaching its decision. Appellate courts do not reweigh evidence or determine the credibility of witness testimony. *Guerrero v. Dold Foods, Inc.*, 22 Kan. App. 2d 53, 56, 913 P.2d 612 (1995). Michelle has failed to carry her burden of proof to show that the property was not owned equally. *Higdon*, 319 Kan. at 580. The district court did not abuse its discretion finding that parties jointly and equally held the property.

6

*Partition*

Because the district court found that the property was jointly held, it could then determine if partition was warranted. "In determining whether equity requires that partition should be denied, the district court has a wide discretion." *Sheets v. Simms*, 36 Kan. App. 2d 361, 365, 138 P.3d 1249 (2006) (citing *Gillet v. Powell,* 174 Kan. 88, 94, 254 P.2d 258 [1953]).

The right of partition has been traditionally favored:

"Partition provides a method whereby two or more persons who own property together may put an end to the multiple ownership, so that each may own a separate portion of the property or, if a division in kind is not feasible, the property may be sold and each owner given an appropriate share of the proceeds. It is said to be a right much favored in the law because it secures peace, promotes industry and enterprise, and avoids compelling unwilling persons to use their property in common. 59 Am. Jur. 2d, Partition, sec. 3, p 773. The right of partition is said to be an incident of common ownership. 68 C.J.S. Partition s 21, p. 33." *Miller v. Miller*, 222 Kan. 317, 320, 564 P.2d 524 (1977), *abrogated on other grounds Walnut Valley State Bank v. Stovall,* 223 Kan. 459, 464, 574 P.2d 1382 (1978).

The general rule is that "all property capable of being held in cotenancy is subject to partition . . . being either in kind or by appraisal and sale." *Hall v. Hamilton*, 233 Kan. 880, 882, 667 P.2d 350 (1983); *Miller*, 222 Kan. at 320. In *Hall*, a mother and father deeded their home to their three children. After the father passed away, a daughter moved into the home and cared for her mother. After her mother died, the daughter continued to live in the home. Her brothers wanted to sell the property, but the daughter objected. The brothers filed a partition action. The court resolved the claim by finding, "it is clear that partition represents the only equitable solution." *Hall*, 233 Kan. at 884.

7

Limited exceptions to the general rule do exist. For example, parties may enter an agreement not to partition. *Gore v. Beren*, 254 Kan. 418, 423, 867 P.2d 330 (1994). But Michelle fails to offer an exception to the general rule that property held in joint tenancy is subject to partition. And the district court's equitable decision to partition the property is supported by the evidence.

Finally, although Michelle argued against partition at trial and does so on appeal, her answer and counterclaim in this matter actually made a request for partition. And Michelle agreed partition was appropriate in the Pretrial Order.

A reasonable person could agree with the district court's decision to partition, and the district court made no error of fact or law. The district court did not abuse its discretion.

DID THE DISTRICT COURT ABUSE ITS DISCRETION IN FINDING THAT MICHELLE WAS NOT ENTITLED TO MORE THAN HALF OF THE PROCEEDS FROM THE SALE OF THE HOUSE?

Michelle alleges that she is entitled to a credit from the home sale proceeds for enhancements she made to the home. Michelle claims the district court abused its discretion by failing to consider the "extensive maintenance and other costs" she paid.

"Improvements added to a property by one of several cotenants may be the subject of a credit to that cotenant. The extent of the credit is not the cost of the improvement, but the amount by which the value of the property is enhanced at the time of sale." *Miller*, 222 Kan. at 321 (citing *Ames v. Ames,* 170 Kan. 227, 225 P.2d 85 [1950]).

"Kansas law recognizes that improvements may take many forms." *Claeys*, 62 Kan. App. 2d at 200. But an "improvement" to real estate usually includes "'[a] valuable addition made to . . . property (usually real estate) or an amelioration in its condition,

8

amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes.'" *Haz-Mat Response, Inc. v. Certified Waste Services, Ltd.*, 259 Kan. 166, Syl. ¶ 4, 910 P.2d 839 (1996) (quoting Black's Law Dictionary 757 [6th ed. 1990]).

The district court considered the evidence from both parties at trial. Isaiah testified that there was no agreement on how bills would be paid or split but that his mother would tell him what was owed, and he would transfer money to her. Isaiah testified that he did not think it was his responsibility to pay for utilities when only Michelle was living at the residence. Isaiah provided a spreadsheet of transfers to his mother related to the home totaling $102,193.95 from October 2015 through June 2022. Isaiah provided exhibits that showed his payments towards the 2017, 2018, 2019, and 2020 property taxes as well as payments towards home insurance for the time period November 2021 through December 2022.

Michelle testified that she paid all the bills, as well as the upkeep of the property. She acknowledged that Isaiah paid for the air conditioner but disputed most of the other payments Isaiah claims he made. Michelle argues Isaiah did not act like an owner of the property and did not significantly contribute to its upkeep.

Despite significant testimony from the parties on their respective payments, there was simply no evidence at trial of any enhancement or improvement to the home. Michelle testified about living expenses and repairs, and Isaiah testified that he helped replace an air conditioner and garage door. But none of those expenses can be considered an improvement or addition "amounting to more than mere repairs or replacement." 259 Kan. 166, Syl. ¶ 4.

9

Michelle relies on *Denton v. Lazenby*, 255 Kan. 860, 879 P.2d 607 (1994), to support her request for a credit. Denton and Lazenby had purchased property and agreed to improve it by building a dam. After they could no longer agree on the project, a partition action was filed. 255 Kan. at 860-861. Our Supreme Court noted that the general rule found in *Miller* is good law, but that the facts before them created an exception. The court found that most partition actions involve a title dispute where "one party acting in good faith has made improvements or where a cotenant acting in good faith has, with or without the knowledge of the other owners, made improvements." 255 Kan. at 862. However, in *Denton*, the court found the partition at issue was different because the cotenants agreed to make improvements and one cotenant shouldered an "unequal burden." *Denton*, 255 Kan. at 862. The court further stated,

> "The parties here agreed the dam would be repaired, and each party put in a considerable amount of time and effort doing so. They also agreed they would not obtain the required state permit before undertaking the repair, and if the dam was negligently repaired, each had an equal part in such repairs. The improvements were made jointly and with full knowledge and consent of the other cotenant. Denton undertook to make improvements to the property by repairing the dam. Lazenby undertook to pay more than his share of the mortgage. Both Denton and Lazenby appear entitled, in determining an equitable division of proceeds from the partition sale, to receive credit or reimbursement for their respective undertakings. We hold the trial court applied equity principles to the facts before it and did not err in doing so." *Denton*, 255 Kan. at 862-863.

The situation before this court fits the general rule, not the exception found in *Denton*. The costs incurred by Michelle were for normal expenses associated with being a homeowner. It is within the discretion of the district court to make an equitable division. The district court did not abuse its discretion in finding that neither party was entitled to more than 50% of the proceeds of sale.

DID THE DISTRICT COURT ABUSE ITS DISCRETION WHEN IT FOUND MICHELLE DID NOT SHOW EXTRAORDINARY HARDSHIP PURSUANT TO K.S.A. 60-1003(d)?

*Homestead Argument*

Michelle asserts for the first time on appeal that the property is her homestead, and the house is exempt from "forced sale under any process of law" pursuant to K.S.A. 60-2301. She believes that the district court erred as a matter of law in failing to consider the classification of the property under K.S.A. 60-2301.

Issues not raised before the district court generally cannot be raised on appeal. See *In re N.E.*, 316 Kan. 391, 407, 516 P.3d 586 (2022). While exceptions exist to this general rule, "Supreme Court Rule 6.02(a)(5) (2025 Kan. S. Ct. R. at 36) requires appellants to identify these exceptions in their opening brief. The failure to do so precludes appellate review of unpreserved issues." *Schutt v. Foster,* 320 Kan. 852, 853, 572 P.3d 770 (2025).

Michelle failed to identify any exception to the general rule in her opening brief, and her failure to do so prevents our review. Moreover, Michelle also fails to explain why she is raising this issue for the first time on appeal. We also note that waiting to raise this issue until the first time on appeal means that we are without facts necessary to our decision. For these reasons, we decline to consider Michelle's "homestead" argument raised for the first time on appeal.

*Extraordinary Hardship*

The district court "may refuse partition if the same would result in extraordinary hardship or oppression." K.S.A. 60-1003(d). In this case, the district court concluded Michelle had "fallen short in her burden to prove extraordinary hardship under K.S.A. 60-1003(d)."

11

It is uncontroverted that Michelle has lived in the residence since its purchase. Michelle asserts moving would cause extraordinary hardship for her because she is of limited financial means, relying on others to help pay her bills. Michelle stated that she would not have the means to find alternative housing until she received the proceeds from the sale of the house. She also testified that she has health limitations that make finding a new place as well as moving her things difficult. Finally, Michelle testified that losing her home would cause an emotional toll.

"Hardship in and of itself is no reason to deny partition." *Sheets v. Simms*, 36 Kan. App. 2d at 365.

In *Curry v. Perney*, 194 Kan. 722, 402 P.2d 316 (1965), the party asserting extraordinary hardship claimed to only have a small income and needed the subject property for a place to live. The court stated that K.S.A. 60-1003(d):

> "never contemplated that one cotenant, who might be a complete stranger to another, would be required to forego partition and furnish the other with a home because of pecuniary circumstances. The equities to which the statute refers are those which may be enjoyed jointly without partition. Equity would not deny to one cotenant his interest in the use of the property for the benefit of another." *Curry*, 194 Kan. at 726.

The court found that the appeal therein was "more a matter for consideration of charity than for equitable relief." *Curry*, 194 Kan. at 725.

12

In this case, Michelle provided evidence that moving would be an *ordinary* hardship. She testified about health issues, financial issues, as well as emotional and logistical problems associated with moving out of a home she had lived in for several years. While Michelle has shown a move would be difficult, a reasonable person could find that Michelle failed to show extraordinary hardship. Thus, the district court did not abuse its discretion.

Affirmed.